# SUPREME COURT.

ANTON JAEGER, respondent, agt. JOHN KELLY, sheriff, &c.,
appellant.

This action was brought to recover the value of 1364 gallons of wine, belonging to
the plaintiff, which was levied upon and sold by the defendant under an execution
against S. and L.

The defendant's counsel demanded to go to the jury, 1st, upon the question whether the
sale of the 15 casks of wine by L. to the plaintiff was in fraud of S., a creditor
of L. 2nd, As to what were the contents of the casks. 3rd, Also requested the
court, to instruct the jury that there was no evidence upon which they could find
that the casks contained 1364 gallons of wine. 4th, That interest by way of
damages on the value of the wine could not be included in their verdict for the
plaintiff—The court refused these requests and directed the jury to find for the
plaintiff, leaving it to them to assess the damages.

*Held*, that there was no contradictory evidence on the question of title, and no
evidence to prove any fraud in the sale.

*Held*, also that the inadequacy of price was not a sufficient ground to hold the sale
fraudulent, or to sustain a verdict for the defendant.

*Held*, also, that there was some evidence but slight, that L. disposed of the wine
to prevent its being reached by S. as a creditor, but there was none affecting the
plaintiff with a guilty knowledge or that his purpose was not honest and fair.

*Held*, also that there was evidence *prima facie* that the casks contained wine. There
was evidence that the casks were gauged by government officials, as containing
the quantity stated. As against an alleged trespasser the proof was quite suffi-
cient—It was for him to give evidence to raise a doubt, before the jury could be
called upon to decide it.

There is no doubt that interest may be added to the value at the time of the conver
sion as damages.

*New York, General Term, Sept.,* 1872.

THIS action was brought to recover the value of 1,364
gallons of wine, belonging to the plaintiff, which was levied
on and sold by the defendant under an execution against
Ferdinand Stoessel and Theodore Lingenfelder.

The defendant, in his answer, denies the ownership of the
plaintiff—the value and quantity of the wine—and the
conversion; and, at folio 10, has the extraordinary denial,

when looked at in the light of truth, that he never at any time or place sold said wine.

He then avers, at folio 14 of his answer, that he levied on this wine by virtue of an execution against Stoessel and Lingenfelder, and that Stoessel and Lingenfelder, jointly, or one of them, individually, had an interest in said wine.

The only issue therefore was who did the wine belong to at the time the levy was made. The jury found a verdict for the plaintiff for $3,874.60, which was the value of the wine as the plaintiff proved it.

Judgment was entered on the verdict, and from that judgment the defendant appeals to this court.

A. J. VANDERPOEL, *for appellant.*

*First.*—The court erred in refusing to allow the case to go to the jury on the question whether or not the sale, if made at all, was made in fraud of Stoessel, at that time a creditor of Lingenfelder on the note on which the judgment in evidence was recovered.

1. By the provisions of our statutes every conveyance made with intent to hinder, delay or defraud creditors or other persons of their lawful suits or demands shall be void as against the persons so hindered, delayed or defrauded. And the question of fraudulent intent shall be deemed a question of fact and not of law. (2 *R. S., Edmunds' ed.,* 142, §§ 1–4; *Murray* agt. *Burtis,* 15 *Wend.,* 212; *Peck* agt. *Crouse,* 46 *Barb.,* 151; *Vance* agt. *Phillips,* 6 *Hill,* 433; see 12 *Barb.,* 533.)

2. There was evidence from which the jury would have been justified in finding the transfer fraudulent. The sale was for less than half the value of the property. Stoessel's judgment was about to be entered. The transfer was not in the usual and ordinary course of business, and the payment of the Straub note by the plaintiff as a part of the consideration was extraordinary. There was no witness as to

the transfer or payment except the plaintiff himself, and he was impeached by his own evidence. He swears, "I saw the wine guaged; it was done by the U.S. gauger."

On his cross-examination he says, "The barrels had the guager's marks on them, both those of Europe and the U.S. gauger. That is all I know about the quantity."

At folio 21, he says, "I paid Lingenfelder the custom-house fees, $568.37." And at folio 32, he says, he paid this to the custom-house and not to Lingenfelder. At fols. 21–22 he swears he paid the custom-house duties, June 8th; that the wine was delivered to him the 8th; and that "on the same day, June 8th, a hired carman took it away." At fol. 31 he says, "I did not take the wine June 8th," but "I made a bargain that day"; and at fol. 38 he says he did not buy the gold to pay the duties until June 11; and the general effect of his cross-examination is to discredit him.

3. The evidence of Stoessel shows that the motive of the transfer was to defeat the payment of his notes.

4. The connection of the person called Eistel with the matters, as detailed by the plaintiff himself, shows that the plaintiff was not acting *bona fide,* but only as a cover for Lingenfelder, whom Eistel represented.

Eistel introduced plaintiff to Lingenfelder; the bargain for the wine was made by plaintiff with Eistel; Eistel also acted for the plaintiff; Eistel told plaintiff about the Straub note.

Eistel made a bargain for the cellar, 140 Water street, to which the wine was taken when removed from the custom-house. The wine was to be stored at the cellar without expense to plaintiff, because Mr. Isaacs, the owner of the cellar, was a friend of Eistel's.

From the defendant's evidence it appears that Eistel and Isaacs are the same person, and that the cellar at 140 Water street was Eistel's.

*Second.*—The court erred in refusing to submit to the jury the question whether any sale to the plaintiff took place, as

testified to by the plaintiff, and also as to what the actual contents of the casks were.

1. As already shown, the alleged sale to plaintiff was not *bona fide*, but was only a colorable transfer, engineered by Eistel to keep the property from being taken by the holders of the notes, which Lingenfelder had given to Stoessel.

The small price of 92½c. per gallon, and all the attending circumstances of the alleged sale, tend to establish this.

2. The contents of the casks was a question of fact, which the jury should have passed upon.

*Third.*—The charge to the jury was erroneous in the following respects :

1. The judge was mistaken in saying "there was no question made in the pleading about the quantity of wine."

The complaint avers there were fifteen casks, containing 1,364 gallons. The answer avers "that said casks did not contain 1,364 gallons."

2. The court charged that the sheriff sold it by the guage marks. There was no evidence that he did.

3. The instruction to the jury to add, to what they should find to be the value, interest thereon at 7 per cent. from the time of taking by the sheriff, and for that amount the plaintiff was entitled to their verdict, was erroneous.

*Fourth.*—The verdict is not sustained by the evidence.

The greatest quantity of wine claimed by plaintiff, or testified to, was 1,364 gallons. The highest price testified to was $2 per gallon on the average. That would make the value $2,778. Interest on this amount from June 12, 1867 (the date of seizure), to March 13, 1871 (the date of trial), being 3 years, 9 months, and 1 day, at 7 per cent., is $716.59. Add this to the value, as instructed by the judge, and we have a total of $3,444.59 as the greatest amount for which verdict could be rendered upon the evidence. The verdict. was $3,874.60.

*Fifth.*—The judgment should be reversed and a new trial ordered.

C. W. VAN VOORHIES, *attorney and*
IRA D. WARREN, *counsel for respondent.*

*First.*—The plaintiff swears that he was introduced to Lingenfelder by a broker named Eistel. That he bought some wine of Lingenfelder. That the bill of the wine, at pages 9 and 10, is correct. That he saw it guaged. That he stood by when it was gauged, and that there were 1,364 gallons.

He bought it on the 8th of June, 1867; paid a note of $250 for Lingenfelder on that day, which Lingenfelder owed to Swaub, as a part payment for the wine.

That afterwards, on the 11th of June, he paid the duties at the custom house and the bonded warehouse, and the wine was delivered to him, at which time he paid Lingenfelder the balance due on the wine. He took a cellar in Water Street and stored the wine.

That the sheriff came a day or two afterwards and took it away, and that it was worth from $2 to $2.25 per gallon.

There is not one word of conflict, nor the slightest contradiction on any of this, except on the question of value.

The wine was sold and delivered to the plaintiff, paid for by him, and put in his own store before the levy. There is no fraud set up in the answer, and no question except ownership made.

The court was therefore right in instructing the jury that the plaintiff was entitled to recover. Also in refusing to submit the question to the jury, as in the defendant's second request, whether or not a sale took place. Also in refusing the defendant's third request, as to whether it was a fraudulent sale. There is no fraud alleged in the answer, and none is proved.

*Second.*—The court was also right in refusing to submit to the jury the defendant's fourth request, "as to what the actual contents of the casks were." Every one engaged in

Jaeger agt. Kelly.

the trial at this stage of the case, except the learned counsel for the defendant, knew that it was undisputed, that the actual contents of the casks was wine.

*Third.*—The court was also right in refusing to instruct the jury, as per the fifth request, "that there was no evidence upon which they could find that the casks contained, at the time of the levy or sale, 1,364 gallons, or any such number of gallons."

At folio 19 the plaintiff swears that there were 1,364 gallons, that he stood by and saw it gauged. This is some evidence of the fact—enough, at all events, to make such an instruction improper.

*Fourth.*—The court was right in refusing to charge the seventh request, viz., "that the jury cannot include, by way of damages to the plaintiff in this action, interest on whatever they might find the value of the wine to be."

Interest on the value of the property at the time of the conversion is always allowed. (*Andrews* agt. *Durant*, 18 *N. Y.*, 502; *Sedgwick on Damages*, 477, *note* 1 *and cases*.)

*Fifth.*—The defendants excepted to the charge "where the court says no question is made in the pleadings or elsewhere as to the quantity of wine." The court does not say "or elsewhere" at all. The court might well have said so, however, as it is sworn to by the plaintiff, and no one disputes it. There was therefore no question for the jury about the amount, and the court was right in so charging.

Had the defendants desired to question the quantity, they had it, and could easily have done so if the plaintiff was not correct.

The court did not tell the jury "that they must assume that it was bought and sold by gauge marks." The instruction there given was for the benefit of the defendant, for the evidence is that the plaintiff saw it gauged.

It is true he took the marks afterwards, and for aught that appears, the Sheriff did also   As the quantity is clearly

proved and rests on uncontroverted evidence, and that part of the charge relates to a branch of the case not submitted to the jury, it could have no bearing on the case.

The next exception to the charge, as to interest on the value, has been already noticed.

*Sixth.*—The learned counsel, challenged each of the jurors for principal cause, and moved the court that they be sworn to try the issues between the parties.

The court stated that the jurors were sworn, at the commencement of the term, to try all the issues presented to them. To which the defendant's counsel excepted. No ground of challenge is stated, hence it amounts to nothing and should be disregarded. (*Freeman* agt. *The People*, 4 *Denio*, 9.)

A general oath may be administered to jurors at the opening of the court.

It is not neccessary that they should be sworn in each case in which they are called. (*People, &c.* agt. *Albany C. P.*, 6 *Wend*, 548.)

*Seventh.*—We ask that the judgment be affirmed, with costs.

*By the court*, LEONARD, *J.*—The defendant's counsel demanded to go to the jury upon the question whether the sale of the fifteen casks of wine by Lingenfelder to the plaintiff was in fraud of Stoessel, a creditor of Lingenfelder, and as to what were the contents of the casks; and also requested the court to instruct the jury that there was no evidence upon which they could find that the casks contained 1,364 gallons of wine; also that interest by way of damages on the value of the wine could not be included in their verdict for the plaintiff. The court refused these requests, and directed the jury to find for the plaintiff, leaving it to them to assess the damages. There was no contradictory evidence on the question of title, and no evidence to prove any fraud in the sale. The plaintiff proved the purchase of the wine by his

own evidence.   He paid 92½ cents per gallon, of which over $500 was in gold, in June, 1867, when, as it is well remembered, gold bore a large premium.   The value, as stated by him, was $2 per gallon on an average, some of it being worth $2.25.

The inadequacy of price was not a sufficient ground to hold the sale fraudulent or to sustain a verdict for the defendant.   The memory of the plaintiff, when cross-examined, appeared to be defective on some unimportant points, but there was nothing in his evidence to cast any doubt upon the fairness or validity of the sale.   It may be conceded that there was some evidence, but slight, that Lingenfelder disposed of the wine to prevent its being reached by Stoessel as a creditor, but there was none affecting the plaintiff with a guilty knowledge, or that his purpose was not honest and fair.

There was no room to doubt that the contents of the casks were wine ; the plaintiff had tasted some of it; he had purchased it as wine, and he paid for 1,364 gallons of it as such.   There was evidence that the casks were gauged by government officials as containing that quantity of wine, and that the duty was paid as upon wine.

This evidence was sufficient *prima facie* to prove the contents of the casks to be wine, and that they contained the quantity claimed.   There was no evidence whatever casting a suspicion upon the reliability of this testimony.   As against an alleged trespasser, the proof was quite sufficient. It was for him to give evidence to raise a doubt before the jury could be called upon to decide it.

There is no doubt that interest may be added to the value at the time of the conversion as damages.   (*Andrews* agt. *Durant*, 18 *N. Y. R.*, 502.)   On the question of value it was proved by the plaintiff that the wine averaged two dollars per gallon.   Against that was the fact that he paid less, and that it was sold by the sheriff at auction for a price still below that paid by the plaintiff.   The jury had the subject before them, and there is no doubt that they intended to adopt the

higher price named by the plaintiff as the value, with interest from the time of the conversion.    The wine, at $2, amounts to $2,728 and interest from the time of the conversion to the trial, is $716.60, being three years and nine months.  The verdict was $3,874.60, being an excess of $430 over the proper sum.

This sum should be deducted from the verdict.

The judgment must be reversed, and a new trial awarded with costs to abide the event, unless the plaintiff stipulate to deduct $430 from the verdict, and upon such stipulation being filed and acknowledged, the judgment may be amended by making such deduction as of the day it was rendered and so amended, may be affirmed, but without costs of the appeal.